UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERIC SENEGAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-18-1734 |
| | § | |
| TAS Foods, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM, OPINION, ORDER AND FINAL JUDGMENT**

Pending before the court is a motion for default judgment filed by plaintiff Eric Senegal against defendant TAS Foods, LLC ("TAS"). Dkt. 34. TAS has not responded to the motion. Having considered the motion and applicable law, the court is of the opinion that the motion (Dkt. 34) should be GRANTED.

**I. BACKGROUND**

In 2016, Senegal and three other people were hired to work at a Kentucky Fried Chicken location. Dkt. 1 at 2. However, Senegal was never given a shift and never began working. *Id.* Later, "other employees" informed Senegal that "the manager had referred to him as a fa–ot and said he needed to change his voice." *Id.*

Senegal sued Yum! Brands, Inc. ("Yum! Brands") and TAS under Title VII of the Civil Rights Act of 1964, alleging that the defendants are "joint employers" of the KFC where Senegal was hired. *Id.* Senegal contends that the KFC manager "did not want Senegal, a gay male, to work at the restaurant because of Senegal's sexual orientation and/or because of expectations for Senegal to act as a stereotypical male." *Id.*

On March 20, 2019, Senegal filed his First Amended Complaint. Dkt. 29. The complaint dropped Senegal's claims against Yum! Brands, leaving TAS Foods as the sole defendant. *Id.* TAS was eventually served with the First Amended Complaint on April 12, 2019, via first class mail and email. Dkt. 33. TAS failed to file an answer or responsive pleading to the First Amended Complaint prior to the May 3, 2019 deadline.

## II. LEGAL STANDARD

Under Rule 55(b)(2), a party may apply for the court to enter a default judgment. These rules "are designed for the just, speedy, and inexpensive disposition of cases on their merits, not for the termination of litigation by procedural maneuver. Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989).

A default judgment "must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hou. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). The well-pleaded allegations in the complaint are assumed to be true, except regarding damages. *Nishimatsu*, 515 F.2d at 1206; *see also United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). However, "the defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206.

A court may not enter a default judgment against a minor or incompetent person unless the person is represented by a general guardian, conservator, or other fiduciary. Fed. R. Civ. P. 55(b). Additionally, a court may enter a default judgment only after the plaintiff files an affidavit regarding the defendant's military status. 50 U.S.C. § 3931. Local Rule 5.5 requires a motion for default

2

judgment to be served upon the defendant via certified mail, return receipt requested. S.D. Tex. L.R. 5.5.

### III. ANALYSIS

Senegal served TAS with the First Amended Complaint on April 12, 2019, via first class mail and email. Dkt. 33. TAS never filed an answer or responsive pleading. On May 9, 2019, Senegal served the motion for default judgment on TAS via certified mail, return receipt requested, as required by the Local Rules. Dkt. 34. TAS failed to file an answer or responsive pleading prior to the May 30, 2019 deadline. Senegal has also shown that TAS is not a minor, incompetent person, or in the military. *Id.* Because TAS has failed to plead or otherwise defend, the court may: (1) enter default against TAS; (2) accept all well-pleaded facts in the complaint as true; and (3) if he has stated a valid claim, award Senegal the relief he seeks. *Nishimatsu*, 515 F.2d at 1206.

**A.    Sexual Orientation Claims**

Senegal's initial complaint against TAS alleged sexual orientation discrimination. Dkt. 1. However, the court dismissed those claims (Dkt. 25) because Title VII does not protect against sexual orientation discrimination in the Fifth Circuit. *Senegal v. Yum! Brands, Inc.*, No. H-18-1734, 2019 WL 448943, at *5 (S.D. Tex. Feb. 5, 2019)(Miller, J); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 270 n.2 (5th Cir. 2015) ("Title VII in plain terms does not cover 'sexual orientation.'"). Thus, to the extent Senegal's amended complaint alleges discrimination based on sexual orientation, Senegal is not entitled to default judgment on those claims. Dkt. 25.

**B.    Gender Discrimination Claims**

Although discrimination based on sexual orientation is not covered under Title VII, "[a]ctionable sex discrimination under Title VII includes discrimination against those who do not conform to sex or gender stereotypes." *Senegal*, 2019 WL 448943, at *5 (quoting *Wittmer v. Phillips*

*66 Co.*, 304 F. Supp. 3d 627, 633 (S.D. Tex. 2018)). Senegal alleges that he was not put on the schedule after being hired because of the KFC manager's "expectations for Senegal to act as a stereotypical male." Dkt. 1 at 2. A plaintiff's "perceived failure to conform to traditional gender stereotypes may be attributable to a plaintiff's appearance or behavior or both." *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250–51, 109 S.Ct. 1775 (1989). Senegal alleges that Defendants' manager said he "needed to change his voice," which could imply that Senegal's voice did not conform with the manager's stereotype of how a male voice should sound. Dkt. 1 at 2. This evidence indicates that Senegal was not put on the schedule because of the employer's perception that Senegal failed to act as a stereotypical male. Accordingly, the court agrees that Senegal's complaint sufficiently pleads facts that constitute gender-stereotype discrimination under Title VII. Dkt. 25.

## IV. DAMAGES

Senegal requests: (1) $6,600 in back wages; (2) $50,000 in compensatory damages and punitive damages; (3) $6,520 in attorney's fees; (4) $1,132 in costs; (5) pre-judgment interest of 2.40% calculated from March 23, 2016 to the date of this judgment; and (6) post-judgment interest of 2.40% from the date of this judgment until the amount is paid. Dkt. 34.

**A.     Back Wages**

Senegal seeks $6,600 in lost wages for the five-month period from the date he was hired by TAS to the date he was able to obtain alternative employment. *Id.* At $7.50 per hour and 40 hours per week, the total amount comes to $6,600 in lost wages. *Id.* An employer that has intentionally engaged in an unlawful employment practice may be required to compensate an injured party for lost wages resulting from the unlawful practice. 42 U.S.C.A. § 2000e-5. Accordingly, the court GRANTS Senegal $6,600 in lost wages.

**B.     Compensatory and Punitive Damages**

Senegal seeks an additional $50,000 in compensatory and punitive damages for the emotional and mental suffering he experienced as a result of TAS's unlawful discrimination and treatment. Dkt. 34. A court may award compensatory damages in a Title VII action for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. 42 U.S.C. § 1981a(b)(3). However, a plaintiff must provide evidence of mental anguish and suffering to a degree of specificity which may include "corroborating testimony or medical or psychological evidence." *Oden v. Oktibbeha Cty.*, 246 F.3d 458, 470 (5th Cir. 2001).

Here, Senegal provides no evidence of any specific non-economic harm that he suffered as a result of his alleged emotional distress or mental anguish. Although courts in the Fifth Circuit have awarded compensatory damages in some Title VII cases, the plaintiffs in those cases suffered from prolonged, direct discrimination while working within their employment capacity. *See, e.g.*, *EEOC v. Boh Bros. Const. Co.*, 731 F.3d 444 (5th Cir. 2013) (holding that plaintiff could recover compensatory damages for gender-stereotype discrimination based on evidence that he was directly harassed and humiliated by his employer for over a year). Here, Senegal was not subjected to any direct or prolonged harassment. Rather, the comments were isolated occurrences made to a third-party employee. Dkt. 34. Because Senegal does not provide any specific evidence of suffering, the court DENIES Senegal's request for compensatory damages.

Punitive damages may only be recovered in a Title VII action when a party demonstrates that the employer engaged in discriminatory practice with malice or reckless indifference to the federally protected rights of the individual. 42 U.S.C. § 1981a(b)(1). "The terms 'malice' and 'reckless' ultimately focus on the actor's state of mind." *Kolstad v. Am. Dental Ass'n.*, 527 U.S. 526, 535, 119 S.Ct. 2118 (1999). The actor must have had knowledge that they were acting in a way that violated

federal law, not just knowledge that they were engaging in discriminatory behavior. *Boh Bros.*, 731 F.3d at 467. Here, there is no evidence that TAS knew it was violating a federal law by discriminating against Senegal. Accordingly, the court DENIES Senegal's request for $50,000 in compensatory and punitive damages.

**C.     Attorney's Fees**

Senegal seeks $6,520 in attorney's fees. Dkt. 34. The court may award reasonable attorney's fees to the prevailing party in a Title VII action. 42 U.S.C. § 1988(b). In evaluating a fee award, the court uses the two-step "lodestar" method to determine the amount of attorneys' fees to which a prevailing party is entitled. *See Combs v. City of Huntington*, 829 F.3d 388, 398 (5th Cir. 2016). First, the court calculates the "lodestar" by multiplying the reasonable number of hours spent on the case by the prevailing hourly rate in the community for similar work. *Id.* A reasonable rate is the prevailing market rate for attorneys of comparable experience employed in cases of similar complexity. *Id.* Second, the court uses the *Johnson* factors to determine whether to adjust the lodestar amount. *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974). The *Johnson* factors allow consideration of elements such as the time and labor required, the novelty of the questions, and the results obtained. *Id.*

Here, Senegal has provided evidence that the requested rate of $400 per hour is reasonable. Dkt. 34-4. Senegal has also provided evidence that the case required 16.3 hours of work. *Id.* Therefore, the court finds that the lodestar amount in this case is $6,520.

Next, the court considers the *Johnson* factors. Two of the *Johnson* factors, "the novelty and difficulty of the questions" and "the skill requisite to perform the legal service properly," refer to the skill level required to litigate the case based on its particular level of difficulty. *Johnson*, 488 F.2d at 418. Here, the labor required was not particularly strenuous, considering TAS did not file an

6

answer. Additionally, other than the motion to dismiss (Dkt. 25), the parties did not have to litigate any additional dispositive motions or discovery issues.

Most importantly, the Supreme Court has held that a critical factor in determining a reasonable fee "is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933 (1983). The Court noted that the lodestar may be decreased when a plaintiff achieves "only partial or limited success" and when the relief is limited in comparison to the "scope of the litigation as a whole." *Id.* In *Farrar v. Hobby*, 506 U.S. 103, 114, 113 S.Ct. 566 (1992), the Court further explained that the primary consideration should be the amount of damages awarded as compared to the amount sought. Here, Senegal originally sought $64,252 in total damages. Dkt. 34. This is over nine times the $6,600 in damages actually awarded. Because Senegal's relief was so limited, the court finds that a reduction of attorney's fees in this case is reasonable. Accordingly, the court GRANTS Senegal $3,500 in attorney's fees.

**D.     Costs**

Senegal seeks $1,132 in costs. Dkt. 34. Upon entry of judgment, costs should be awarded to the prevailing party. *See* Fed. R. Civ. P. 54(d)(1). Parties must keep their own record of taxable costs. S.D. Tex. L.R. 54.2. The prevailing party must apply for costs by filing a bill of costs within fourteen days of the entry of a final judgment. *Id.* Based on the itemized list of expenses provided in Exhibit 4, the court finds the amount requested to be reasonable. Dkt. 34. Accordingly, the court GRANTS Senegal $1,132 in costs.

**E.     Pre-judgment Interest**

Senegal asks for a pre-judgment interest rate of 2.40% to be calculated beginning on March 23, 2016, the date this suit was filed. *Id.* The decision to award pre-judgment interest on a back pay award in Title VII cases "rests within the sound discretion of the district court." *Gloria v. Valley*

7

*Grain Prod., Inc.*, 72 F.3d 497, 499 (5th Cir. 1996). Pre-judgment interest only applies to past damages. *Thomas v. Tex. Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002).

In the absence of a compelling basis for an increased rate, the current federal statutory post-judgment interest rate is an appropriate pre-judgment interest rate to make the plaintiff "whole." *Durant v. Xie He Sheng, LLC*, No. H-06-3578, 2018 WL 8011853, at *5 (S.D. Tex. Mar. 30, 2018)(Atlas, J.). Here, the court finds the current 2.02% post-judgment interest rate in the Southern District of Texas to be a reasonable rate for calculating pre-judgment interest. Accordingly, the court GRANTS Senegal pre-judgment interest of 2.02% to be calculated from March 23, 2016 to the date of this judgment. [1]

**F.     Post-judgment Interest**

Because Senegal is entitled to a money judgment, he is also entitled to post-judgment interest. *See* 28 U.S.C. § 1961 (allowing post-judgment interest on any money judgment awarded in a civil case in district court). Although Senegal asks for a 2.40% post-judgment interest rate (Dkt. 34), the post-judgment interest rate in the Southern District of Texas is currently set at 2.02%. Accordingly, the court GRANTS Senegal post-judgment interest at 2.02% as provided by § 1961.

---

[1] Pre-judgment interest is usually calculated beginning on the date of the unlawful employment action. *Thomas*, 297 F.3d at 372. However, Senegal only requested pre-judgment interest from the date of filing. Dkt. 34.

## IV. CONCLUSION

Senegal's motion for default judgment (Dkt. 34) is GRANTED. The court hereby awards Senegal the following:

(1) $6,600 in back wages;

(2) $3,500 in attorney's fees;

(3) $1,132 in costs;

(4) Pre-judgment interest of 2.02% calculated from March 23, 2016 to the date of this judgment;

(5) Post-judgment interest of 2.02% from the date of this judgment until the amount is paid.

Signed at Houston, Texas on June 21, 2019.

_____
Gray H. Miller
Senior United States District Judge